DUKE *v.* EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN.

Opinion delivered January 16, 1911.

1.  WITNESSES—CROSS EXAMINATION.—It was not error, on cross examina-
tion of a witness, to refuse to permit a question to be asked that was
not responsive to the examination in chief.  (Page 292.)

2. New trial—newly discovered evidence.—A new trial for newly dis-
covered evidence was properly denied where appellant claimed that
she was surprised by the testimony of a certain witness, and had a
subsequent affidavit of such witness contradicting his testimony, but
appellant failed to attach such affidavit to her motion. (Page 294.)

3. Same—newly discovered evidence.—A new trial should not be
granted for newly discovered evidence that was cumulative merely.
(Page 295.)

Appeal from White Circuit Court; *Hance N. Hutton,* Judge;
affirmed.

*J. N. Rachels* and *Charles E. Robinson,* for appellant.

The testimony of A. D. Williams, offered to impeach a
writing that he himself had made, was a complete surprise.

When the losing party does not know whether testimony
which takes him by surprise is true or false, nor that he can rebut
it, he is not bound to move for a continuance, but may set it
up as a ground for new trial. 66 Ark. 612; 89 Ark. 122.

*S. Brundidge, Jr.,* for appellee.

On the question of surprise appellant is in no attitude to
complain. No effort was made after the introduction of the tes-
timony complained of to obtain a continuance for the purpose
of contradicting it. 57 Ark. 60; 67 Ark. 47.

There is no showing that the affidavit necessary to sustain
an allegation of surprise in a motion for new trial was attached
to the motion in this case. Kirby's Dig., § 6219. Moreover, the
evidence to obtain which a new trial is sought is merely cumula-
tive, hence there was no error in overruling the motion. 89
Ark. 128.

Wood, J. Appellant, as beneficiary in a policy of life in-
surance issued by appellee, brought this suit to recover the amount
of the policy. The defense was that at the time of the death
of the assured he was not in good standing, having failed to
make payment of his dues as required by the contract.

The appellee was a fraternal order, having an insurance de-
partment. The policy provides that it shall not lapse for thirty
days if the assured is too sick when the payment becomes due
to direct the payment of premiums. The constitution and bylaws
were part of the insurance contract. These provided that the
dues were due and payable from the first to the tenth of each
month. If the dues were not paid at midnight on the 10th of

the month, the policy lapsed unless the payment of the dues was interrupted by the sickness of the assured which rendered him incapable of directing the payment of the premium. In the latter case the policy did not lapse until the expiration of thirty days after the 10th according to the other provision above mentioned.

The appellant contended that the dues of her husband, the assured, had been paid at the time of his death, April 1, 1909. It was her contention that the receipts which she held showed this fact, but, if mistaken as to this, that then she had proved by testimony which she had adduced, and testimony which she offered but which the court refused to allow, that the assured was incapable, on account of illness, of directing the payment of the premium due March 10, 1909. R. C. Duke, the brother of the assured, testified that R. T. Duke was a very sick man from about the first of March until his death. The witness was asked the following:

"Observing him as you did, would you say that he was, or was not, able to attend to or direct or instruct the payment of the insurance premiums on his insurance policy?" The court refused to permit the witness to answer. But the court permitted the witness to testify that the assured because of his physical condition was not "mentally capable of directing the payment of a premium at any time after the 7th day of March." There was no error in the ruling of the court. The appellee called as a witness Doctor Tapscott, who testified that he attended the assured in his last illness, and that his first visit, as shown by his book, was on March 18. Appellant then asked "what was his mental and physical condition on that day?" The court refused to allow the witness to answer. There was no error in the ruling, the question was not responsive to the examination in chief. If appellant desired to show by Doctor Tapscott that the condition of R. T. Duke was such between the 1st and 10th of March as to render him mentally incapable of directing the payment of premiums, then she should have offered to make the doctor her witness for that purpose.

There was nothing in the question to indicate that the purpose of appellant was to show the mental incapacity of the assured between the first and tenth day of March to direct the payment of premiums.

The testimony of witness J. P. Bradford, on behalf of appellee, tended to show that R. T. Duke, the assured, was up on the 13th day of March, 1909. Appellant in her motion for new trial alleged that the above testimony of Bradford was damaging and was a surprise, and she alleged that she had the affidavit of Bradford, made on the 30th day of October, 1909, in which he states that R. T. Duke was 'unable to direct the payment of premiums on his life insurance on account of physical condition from and after the first day of March until the first day of April, 1909. But there was no affidavit of Bradford's attached to the motion for new trial showing the facts alleged in the motion. Therefore the motion for new trial could not be sustained on the ground of newly discovered evidence. Moreover, such testimony would have been only cumulative. For several other witnesses had testified that the assured between the first and tenth of March was mentally incapable of directing the payment of premiums. The 21st paragraph of the motion for new trial was as follows:

"Because the plaintiff was surprised at the testimony of Dean Williams to the effect that he had repaid to the deceased, R. T. Duke, in his life time, the sum of one dollar and sixty cents, which was accepted by the said R. T. Duke as a refund of the November, 1908, dues; that said testimony was damaging as well as a surprise, and the plaintiff did not at the time know that she could disprove the truthfulness of said evidence by proving prior statements of the said Dean Williams, which said statements were made after the death of the said R. T. Duke, and said statements were to the effect that he did remit the November dues to the company, and that he had convinced the defendant company of such remittance, and that the company had given due credit for the same. I attach hereto a letter from the defendant company, addressed to A. D. Williams, who is the same person, which reads, in part, as follows: 'Atlanta, Ga., April 24, 1909. Mr. A. D. Williams, West Point, Arkansas; Worthy Guest: It is my deep regret to be compelled to report to you by the fartherest extension to which dues could possibly be credited to the late Worthy Guest R. T. Duke would put him in good standing to March 10 only. I had made a notation to credit the installments according to your understanding of the

same, bringing them forward beyond the Eminent Clerk's books for the period of one month. Signed, Jno. B. Frost, Eminent Counsel.' That upon a trial anew the plaintiff can prove that Dean Williams deceived her into believing that he would testify that the remittance had been made and that after the death of R. T. Duke the defendant company acknowledged its error and corrected its record accordingly."

To support this ground of the motion was the affidavit of J. N. Rachels as follows: "I come as attorney for plaintiff, because she is not and cannot be in attendance upon the court at this term, and on oath state that the plaintiff was surprised at the testimony of Dean Williams on the question of the repayment of the November, 1908, premium, that the same can in the manner set out in reason 21 for a new trial disprove if a new trial is granted, and further that the plaintiff did not at that time know that the same was true or false. (Signed) J. N. Rachels. Subscribed and sworn to before me this February 4, 1910. H. L. George, Notary Public."

A. D. Williams was clerk of the appellee at West Point, Ark. He received the dues and forwarded same to the home office at Atlanta. He testified as follows: "The last assessment that I collected from Mr. Duke was in October, 1908. I don't know about the receipt issued by the company, as I never saw that, but I know that I gave him a receipt, and in my remittance I was $1.60 short; the company wrote me a letter in regard to it, and I was $1.60 short. I referred back to my book and saw that I had given Mr. Duke a receipt all right, and had sent a copy into the company, and as it happened the $1.60 corresponded with his dues and should have gone to Mr. Duke's dues. The company wrote to Mr. Duke, and he came to see me about it. I told him I sent his dues in, and we compared the letter, and I gave him $1.60 out of the cash drawer as I saw I was short, and the company was right, and told him to send it to the home office himself. That was in November; I gave him the receipt for November; it is in my handwriting, and is the last one I gave him. This receipt was not furnished by me, and I would judge that it was furnished by the company. This is December for the same amount, and it shows that it was for November, and the one I gave shows for the same month."

The above testimony tended to prove that, although R. T. Duke had paid his dues for the month of November, 1908, and had received his receipt therefor, Williams, the clerk, had failed to remit to the home office, and that the assured, upon being advised of that fact, accepted a refund of the money from Williams, which left the November dues of R. T. Duke unpaid. Appellant sets up in her motion for new trial that Williams deceived her into believing that he would testify that the remittance had been made, and in the affidavit of her counsel accompanying the motion it is shown that the appellant did not know at the time of the trial whether the testimony of Williams that he had not remitted the November dues was true or false. Attached to the motion is a letter from the appellee that tends to prove that Williams had remitted the November dues to the home office, and that R. T. Duke had paid these dues, and had received credit for same, and was in good standing with the appellee to March 10, 1909.

The alleged newly discovered evidence was cumulative. For appellant introduced R. C. Duke, a brother of the assured, who testified that he was present on the occasion when the refund of the November dues to the assured is alleged to have taken place, that he heard the conversation between Williams and his brother concerning that matter, that no one else was present, and that Williams did not refund to his brother the dues for November. In other words, the witness denied that any such transaction took place. Judge J. N. Rachels for the appellant testified that his law firm took up the matter of adjusting the claim, and wrote the company, and received a letter from it which discussed the question of liability and the date of the payments, and showed that Duke could not have been in good standing later than March 10. This letter to Rachels showed in effect that the company had received the November dues.

The only question left therefore was as to whether the assured was so ill between the first and tenth of March, 1909, that he was mentally incapable of giving instructions for the payment of dues. This question was submitted upon correct instructions, and there was evidence to sustain the verdict. Finding no error, the judgment is affirmed.